SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-08-0116-AP |
| Appellee, | ) | |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No. CR-1997-003949 |
| LEROY D. CROPPER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Joseph B. Heilman, Judge

**AFFIRMED**

_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
      By   Kent E. Cattani, Chief Counsel
           Criminal Appeals/Capital Litigation Section
           Jeffrey A. Zick, Assistant Attorney General
           Melissa A. Parham, Assistant Attorney General
Attorneys for State of Arizona

BRUCE PETERSON, OFFICE OF THE LEGAL ADVOCATE              Phoenix
      By   Kerri L. Chamberlin, Deputy Legal Advocate
Attorneys for Leroy D. Cropper

_____

**R Y A N**, Justice

¶1      Leroy D. Cropper pled guilty to first degree murder in 1999 for the 1997 killing of an Arizona Department of Corrections officer.[1]  A Maricopa County judge determined that

_____

[1]     Cropper also pled guilty to dangerous and deadly assault by a prisoner and three counts of promoting prison contraband.

Cropper should be sentenced to death for the murder and an automatic appeal followed. *See State v. Cropper* (*Cropper I*), 205 Ariz. 181, 183-84 ¶ 12, 68 P.3d 407, 409 (2003). While the appeal was pending, the Supreme Court decided *Ring v. Arizona* (*Ring II*), which held that jurors, not judges, must find aggravating factors that expose defendants to capital sentences. 536 U.S. 584, 609 (2002). In response to that decision, and subsequent legislation,[2] this Court vacated Cropper's sentence and remanded for resentencing under the appropriate statutes. *State v. Cropper* (*Cropper II*), 206 Ariz. 153, 158 ¶ 24, 76 P.3d 424, 429 (2003).

**¶2**       On remand, a jury found two aggravating factors: Cropper had a prior serious conviction and he committed the murder while incarcerated. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-751(F)(2), (F)(7) (Supp. 2009).[3] That jury, however, could not reach a verdict as to whether the killing was especially cruel, A.R.S. § 13-751(F)(6), or whether death was the

---

[2]    After *Ring II*, legislation was enacted providing for a jury trial as to both the existence of capital aggravating circumstances and the appropriate sentence. 2002 Ariz. Sess. Laws, ch. 1, § 3 (5th Spec. Sess.)*; see State v. Ring* (*Ring III*), 204 Ariz. 534, 545 ¶ 13, 65 P.3d 915, 926 (2003).

[3]    Arizona's capital sentencing statutes were reorganized and renumbered to A.R.S. §§ 13-751 to -759. 2008 Ariz. Sess. Laws, ch. 301, §§ 26, 38-41 (2d Reg. Sess.). Because the renumbered statutes are not materially different, we cite the current version, unless otherwise noted.

appropriate sentence. A second jury was impaneled, *see* A.R.S. § 13-752(K), and concluded that the murder was committed in an especially cruel manner and that death was the appropriate punishment. This automatic appeal followed. Ariz. R. Crim. P. 26.15, 31.2. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 13-4031 (2001).

**I**

¶3     Cropper was an inmate at the Perryville prison in 1997.[4] Two corrections officers, one female, another male, were looking for missing mops and brooms. The female guard approached Cropper's cell and saw Cropper and his cell mate sitting on a bunk. She discovered contraband tattooing material in the cell and ordered the two inmates out so the officers could conduct a search. The officers found a home-made tattoo gun, needles and ink, a shank, and another item with security implications. Cropper became angry that the female officer, in Cropper's opinion, had been disrespectful of him and his property.

¶4     Although the female officer had angered Cropper, he sought out a violent confrontation with the male officer -- "an innocent man" -- because he did not want to be known as a "ladykiller." Cropper had been placed on lockdown, but he

---

[4]     A detailed description of the facts is set forth in *Cropper I*, 205 Ariz. at 182-83 ¶¶ 2-9, 68 P.3d at 408-09.

3

obtained a knife from another inmate and escaped from his cell with the help of others.

¶5        The male officer was alone in the control room of the cellblock in which Cropper was held.  Cropper banged open the door, rushed at the officer and stabbed him in the neck.  The men crashed into a desk.  Cropper pinned the officer up against a wall while a "very violent" struggle continued for up to two minutes.  Believing he had seen the officer die, Cropper ran back to his cell and attempted to clean himself up while prison officers were changing shifts.

¶6        Officers coming on duty discovered the victim.  They performed CPR on him in the control room for about ten minutes and continued life-saving efforts until the officer was finally brought to Perryville's main building.  One officer testified that he believed that the victim remained alive, moving his eyes and maintaining a faint pulse in the moments after he was discovered.  The control room was covered in blood.

**II**

¶7        Because the first jury to consider Cropper's penalty could not reach a verdict, he argues that the second penalty-phase trial violated his rights under the Ex Post Facto Clauses of the United States and Arizona Constitutions.  U.S. Const. art. I, § 10; Ariz. Const. art. 2, § 25.  Those provisions "prohibit[] a state from 'retroactively alter[ing] the

4

definition of crimes or increas[ing] the punishment for criminal acts.'" *State v. Ring* (*Ring III*), 204 Ariz. 534, 545 ¶ 16, 65 P.3d 915, 926 (2003) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)); *see also State v. Noble*, 171 Ariz. 171, 173-74, 829 P.2d 1217, 1219-20 (1992). Cropper contends that by permitting the State to retry the penalty phase after a jury deadlocked, the legislature changed the substantive standard applicable to capital defendants.

¶8    Under A.R.S. § 13-752(K), if the penalty-phase jury "is unable to reach a verdict, the court shall dismiss the jury and shall impanel a new jury." It is only after that second jury cannot resolve the case that a court must impose a life sentence. *Id.* In contrast, Cropper claims, under prior law, A.R.S. § 13-703 (2001), a trial judge could not have "hung," but rather was charged with determining in a single proceeding whether a capital or lesser sentence was warranted based on an assessment of aggravating factors and mitigating evidence. Thus, he argues, permitting a second jury to determine whether a death sentence was appropriate when the first trier of fact "determined that there was some doubt as to whether death was the appropriate punishment, and when the law at the time of the offense would not have permitted a second trial, violates the ex post facto prohibition."

¶9    This Court, however, has rejected similar challenges.

*See Ring III*, 204 Ariz. at 546-47 ¶¶ 20-21, 65 P.3d at 927-28; *see also State v. Dann*, 220 Ariz. 351, 367 ¶¶ 82-83, 207 P.3d 604, 620 (2009) (no ex post facto violation for failure to require special verdicts or interrogatories); *State v. Bocharski*, 218 Ariz. 476, 492 ¶¶ 76-78, 189 P.3d 403, 419 (2008) (same). In *Ring III*, this Court explained that "Arizona's change in the statutory method for imposing capital punishment is clearly procedural." 204 Ariz. at 547 ¶ 23, 65 P.3d at 928. This is so because the change to jury sentencing made no change in punishment and added no new element to the crime of first degree murder. *Id*. Moreover, the Court rejected the argument that the procedural change had a substantive impact, noting that the state is still required to prove aggravating circumstances beyond a reasonable doubt. *Id.* at ¶ 24. "The only difference is that a jury, rather than a judge, decides whether the state has proved its case." *Id.*

¶**10** Our holding in *Ring III* was based, in part, on the Supreme Court's identical conclusion in *Dobbert v. Florida,* 432 U.S. 282 (1977). *Id.* at 546 ¶ 20, 65 P.3d at 927. In the context of a capital resentencing after a change in sentencing procedure, *Dobbert* explained that no ex post facto claim arises when "[t]he new statute simply alter[s] the methods employed in determining whether the death penalty was to be imposed," and not "the quantum of punishment attached to the crime." 432 U.S.

6

at 293-94.

¶11        Cropper's attempt to distinguish these principles is flawed for two reasons.  First, it attempts to compare the roles of trial judges and juries.  A judge, unlike a jury, cannot "deadlock" on a sentencing decision.  Second, it misapprehends the effect of a hung jury.  A jury's decision to acquit a defendant differs from a jury's failure to reach a decision. *Cf. Yeager v. United States*, 129 S. Ct. 2360, 2366 (2009) (second trial after failure to reach a verdict is not prohibited by double jeopardy principles).  As in *Ring III,* the change in the law permitting the state to retry the penalty phase when the first jury could not reach a decision neither adds a new element to the crime of first degree murder nor increases the punishment for the crime.  Therefore, Cropper's ex post facto argument fails.[5]

### III

¶12        Cropper next contends that the prosecutor committed

---

[5]     Citing *State v. Valencia*, Cropper argues that the previous standard of proof for a capital sentence was that "[w]here there is a doubt whether the death sentence should be imposed, [it should be] resolve[d] . . . in favor of a life sentence."  132 Ariz. 248, 250, 645 P.2d 239, 241 (1982).  But this statement reflects this Court's standard with regard to independent review. *See State v. Roque*, 213 Ariz. 193, 231 ¶ 170, 141 P.3d 368, 406 (2006) (applying penalty doubt standard on independent review). The legislature made no substantive change in shifting from judge sentencing to jury sentencing.  *Ring III*, 204 Ariz. at 547 ¶ 23, 65 P.3d at 928.

misconduct in his arguments regarding the (F)(6) cruelty aggravator. At Cropper's request, the trial court instructed the jury that, to establish the cruelty prong of the (F)(6) aggravator, the State was required to show a victim's suffering "existed *for a significant period of time.*"[6] (Emphasis added). In their arguments, both defense counsel and the prosecutor attempted to explain to the jury what constituted a "significant period of time." The defense objected after the prosecutor told jurors that the standard was "subjective," suggesting that the phrase should be defined by "what that means to you." The trial court overruled the objection, and the prosecutor again explained the "significant period of time" language in "subjective" terms. The defense ultimately moved for a mistrial, which was denied.

¶13 The prosecutor's remarks must be assessed in context. The instruction Cropper requested, to which the State objected,

---

[6] The instruction read:

All first degree murders are, to some extent, cruel, however, this aggravating circumstance cannot be found to exist unless the State has proven beyond a reasonable doubt that the murder was especially cruel. "Especially" means unusually great or significant. The term "cruel" focuses on the victim's pain and suffering. A murder is especially cruel if the State proves beyond a reasonable doubt that the victim suffered pain prior to losing consciousness, the victim's conscious suffering existed for a significant period of time, and the defendant knew or should have known that the victim would suffer pain.

differed from (F)(6) cruelty instructions this Court has previously approved. Our cases make clear that an (F)(6) instruction is sufficient if it requires the state to establish that "'the victim consciously experienced physical or mental pain and the defendant knew or should have known that' the victim would suffer." *State v. Tucker*, 215 Ariz. 298, 310-11 ¶¶ 31-33, 160 P.3d 177, 189-90 (2007) (alterations removed) (quoting *State v. Anderson*, 210 Ariz. 327, 352 n.18 ¶ 109, 111 P.3d 369, 394 n.18 (2005)). No set period of suffering is required. *See State v. Soto-Fong*, 187 Ariz. 186, 203-04, 928 P.2d 610, 627-28 (1996) (rejecting any "bright-line, arbitrary temporal rule" to determine whether cruelty has been established). An instruction consistent with this standard sufficiently narrows the (F)(6) aggravator for constitutional purposes. *See Tucker*, 215 Ariz. at 310-11 ¶¶ 31-33, 160 P.3d at 189-90; *see also Walton v. Arizona*, 497 U.S. 639, 654-56 (1990) (concluding that Arizona court's construction of the (F)(6) aggravator is appropriate under the Eighth Amendment), *overruled on other grounds by Ring II*, 536 U.S. at 608-09.

¶14 To evaluate "the propriety of a prosecutor's arguments, we consider 'whether the remarks called to the jurors' attention matters that they should not consider.'" *State v. Morris*, 215 Ariz. 324, 336 ¶ 51, 160 P.3d 203, 215 (2007) (quoting *State v. Roque*, 213 Ariz. 193, 224 ¶ 128, 141

9

P.3d 368, 399 (2006)).  In his comments, the prosecutor sought to clarify the meaning of "significant period of time" for the jury.  The comments with which Cropper takes issue deal directly with the otherwise-unexplained jury instruction language he requested; the comments did not dispute the essential elements of physical cruelty.  Consistent with this Court's case law, the prosecutor's comments emphasized that "significant period of time" did not mean a particular amount of time, but nevertheless recognized that the state was required to establish conscious suffering.  Because the argument focused on considerations proper for the jury in light of the instruction Cropper requested, the prosecutor did not commit misconduct.

**IV**

¶15      Because the murder was committed before August 1, 2002, this Court "independently review[s] the trial court's findings of aggravation and mitigation and the propriety of the death sentence."  A.R.S. § 13-755 (Supp. 2009); *see* 2002 Ariz. Sess. Laws, ch. 1, § 7 (5th Spec. Sess.).

¶16      Cropper does not contest that the prior serious offense aggravator, § 13-751(F)(2), and the offense committed while in custody aggravator, § 13-751(F)(7), were proven.  These aggravating circumstances are established, respectively, by Cropper's guilty plea for a 1999 aggravated assault on another inmate in the Maricopa County jail and the undisputed evidence

10

that Cropper was in prison when he murdered the corrections officer.

¶17    Cropper does, however, argue that in our independent review, we should find the § 13-751(F)(6) aggravator was not established beyond a reasonable doubt.  *See State v. Speer*, 221 Ariz. 449, 459 ¶ 51, 212 P.3d 787, 797 (2009) (explaining that on independent review the Court "must independently determine whether the State has established the aggravating circumstance beyond a reasonable doubt").

**A**

¶18    "Cruelty exists if the victim consciously experienced physical or mental pain prior to death and the defendant knew or should have known that suffering would occur."  *State v. Trostle*, 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citation omitted).  The evidence demonstrates that Cropper sought out a violent confrontation.  The struggle lasted up to two minutes, he acknowledged.  Further, the medical testimony regarding the victim's wounds and blood loss demonstrates that the officer suffered physical pain.  *See State v. Bearup*, 221 Ariz. 163, 172 ¶ 49, 211 P.3d 684, 693 (2009) (cruelty established when assault lasted between sixty and ninety seconds and resulted in substantial blood loss); *State v. Amaya-Ruiz*, 166 Ariz. 152, 177, 800 P.2d 1260, 1285 (1990) (evidence of struggle demonstrated cruelty).

11

¶19     Dr. Philip Keen, former chief medical examiner of Maricopa County and a specialist in forensic pathology, testified in detail on the nature of the attack. He explained that the wounds inflicted would have been particularly painful because of the "higher concentration of nerves" in the neck; the officer would have felt a "stinging, burning kind of pain."

¶20     Keen also testified that the officer suffered a number of "penetrating injuries." The deeper of these cuts severed his thyroid gland, the jugular vein, and his chest cavity and lung. The officer bled to death as a result of these injuries. The officer did not, however, experience significant arterial damage from the attack because his aorta and carotid arteries were not damaged. Thus, the time it would have taken to lose consciousness was the time it took him to bleed out, Keen confirmed. Based on the injuries, the officer would have "progressively" lost consciousness. Keen testified that it would have taken "minutes" for him to lose consciousness based on the amount of blood found in his chest cavity and at the scene. Despite Cropper's contentions, Keen concluded that it was unlikely the officer would have lost consciousness in less than a minute. Taken together, these facts establish beyond a reasonable doubt that the officer consciously suffered physical pain and Cropper knew or should have known he would experience

12

such pain.[7]

B

¶21     In mitigation, Cropper argues that we should find that he suffered an abusive childhood and he has expressed remorse for his actions. In our review, we have considered all of the mitigation evidence presented to the jury.

¶22     We conclude that Cropper has established by a preponderance of the evidence that he suffered an abusive childhood. *See* A.R.S. § 13-751(C). Testimony detailed that both his father and stepmother abused him. For example, evidence suggests that Cropper's father beat Cropper and once choked him to the point of passing out. When Cropper did not properly clean a toilet, his stepmother beat his head against it and flushed his head in it. Other evidence indicates that Cropper was neglected as he grew up in New York: he had to sneak food to eat and was left without a winter coat.

¶23     Cropper's claims of remorse present a closer question.

---

[7]    In *Soto-Fong* we stated that "where shots, stabbings, or blows are inflicted in quick succession, one of them leading rapidly to unconsciousness, a finding of cruelty, *without any additional supporting evidence*, is not appropriate." 187 Ariz. at 204, 928 P.2d at 628. But this is not a case in which the proof of cruelty relies on a claim that the method by which the murder was committed was inherently cruel. *See State v. Ellison*, 213 Ariz. 116, 142 n.19 ¶ 121, 140 P.3d 899, 925 n.19 (2006) (rejecting state's claim that strangling inherently cruel). Rather, the State provided ample evidence of pain and consciousness, as well as other evidence indicating that Cropper sought out a violent conflict.

13

For example, Cropper, in allocution, expressed remorse, stating that he regretted his action and recognized its impact on the officer's family and on his own. He presented testimony, including some by his mitigation specialist, that he had changed while in prison. We have found allocution sufficient to establish remorse. *State v. Velazquez*, 216 Ariz. 300, 315 ¶ 74, 166 P.3d 91, 106 (2007).

¶24 In rebuttal, however, the State presented strong evidence contradicting genuine remorse and reform. Cropper threatened penal personnel and wrote letters mocking them and bragging about the murder. For example, when he was found with two toothbrushes in his possession in the Maricopa County jail, Cropper told a jail guard "You wouldn't know what a shank was unless it was sticking out of your neck," adding that "the next time I get a toothbrush, I will stick it in your fucking neck." Asked during an investigation whether he was an "expert" on shanks, Cropper said, "Let's just say I know what I'm talking about. I've been around." Cropper bragged that he had "stainless for each hand" in a letter to another inmate. He once told an officer that if he wanted an officer dead, he would be dead already.

¶25 Further, Cropper threatened a "repeat episode of blood and guts" and bragged he would probably "be on the TV again," in a letter. He signed letters using "in your neck" and "Fuck them

all in the neck" as epigrams and "IYN" as a return address. After the murder, Cropper wrote a letter addressed "Greetings fellow psychopaths," in which he boasted about the slaying, writing "Yee haw. Are we having fun yet? He he." He mocked the prison personnel who had responded to the killing as "a bunch of keystone cops all running around totally fucking panicked and deathly scared." Finally, he bragged that protective vests worn by officers "protect the heart, lungs, kidney, etcetera, etcetera, but their daring necks are always exposed. Imagine that."

¶26 After the murder, Cropper also continued to have disciplinary problems and act violently. For example, while in the Maricopa County jail, Cropper was found with a six-inch shank; he was also involved in the December 10, 1999 incident for which he was later convicted, establishing the § 13-751(F)(2) aggravator. As late as 2002 he attempted to injure another inmate with a dart.

¶27 In addition, Cropper was heavily invested in prison culture. For instance, when Cropper pled guilty to the murder, he said that he did not want his plea referred to as a plea agreement, confirming that he did not "want anybody to get the wrong impression that [he had] somehow cooperated with the State." He stated that under the inmate codes, snitches are among the worst people. Significantly, Cropper took the stand

15

in the trial of the other inmates and took personal responsibility for the entire crime, despite the fact that co-conspirators aided him in committing it.

¶28    In light of this evidence, it is difficult to conclude that Cropper's later remorse is genuine. Indeed, we have found similar evidence sufficient to rebut or foreclose a finding of remorse. *See State v. Greene*, 192 Ariz. 431, 443 ¶ 59, 967 P.2d 106, 118 (1998) (stating that evidence of defendant's "vile state of mind," shown in letters after the crime, rebuts remorse); *State v. Djerf*, 191 Ariz. 583, 598 ¶¶ 64-65, 959 P.2d 1274, 1289 (1998) (stating that defendant's tactical motives and statements of potential for future killing prevent finding of remorse). Accordingly, although we credit Cropper's allocution and related testimony, we cannot give such evidence substantial weight in reviewing the propriety of the death sentence.[8]

**C**

¶29    In considering the propriety of the death sentence, "we do not merely consider the quantity of aggravating and mitigating factors which were proven, but we look to the quality and strength of those factors." *State v. Newell*, 212 Ariz. 389, 405 ¶ 82, 132 P.3d 833, 849 (2006). "The relationship between

---

[8]    Evidence also established that Cropper harbored an interest in murdering guards for some time. At one point he wrote that "[m]any times I go back and forth with delusions of killing these guards."

16

the mitigation evidence and the crime . . . can affect the weight given to such evidence." *State v. Ellison*, 213 Ariz. 116, 144 ¶ 132, 140 P.3d 899, 927 (2006). Three aggravators, including the (F)(6) cruelty aggravator, are established.

¶30        Cropper urges us to give significant weight to his abusive childhood, arguing that the cell search triggered an uncontrollable rage. We do not find this argument persuasive. First, "childhood troubles deserve little value as a mitigator for . . . murder[] . . . committed at age thirty-three," as Cropper was at the time of this offense. *Id.* Further, the record does not demonstrate a crime of rage. Rather, it demonstrates that Cropper specifically sought out a male officer as a victim, obtained a weapon, and launched a calculated, violent attack. "This was not a crime of passion or an impetuous reaction to difficult circumstances." *Speer*, 221 Ariz. at 465 ¶ 94, 212 P.3d at 803. Moreover, he continued to engage in acts of violence and other infractions in jail and prison.

¶31        Similarly, the evidence of remorse and reform he provided is of limited weight in light of his words and actions suggesting his remorse and reform are not genuine. *See Greene*, 192 Ariz. at 443 ¶ 59, 967 P.2d at 118; *Djerf*, 191 Ariz. at 598 ¶¶ 64-65, 959 P.2d at 1289.

¶32        The aggravators in this case, in contrast, are

entitled to substantial weight. The (F)(7) aggravator, for example, represents a legislative judgment that inmates who commit first degree murder while incarcerated have failed to make even minimal efforts to comply with societal norms and thus warrant particularly serious treatment. Likewise, Cropper's aggravated assault conviction warrants particular weight, as it stemmed from another violent attack some eighteen months after he murdered the corrections officer. Finally, the (F)(6) aggravator is likewise entitled to considerable weight. In light of the significant aggravating factors, and the comparatively minimal mitigation, a capital sentence is warranted.[9]

V

¶33 For the above reasons, we affirm Cropper's death sentence.

_____
Michael D. Ryan, Justice

---

[9] Cropper raises several issues previously decided by the Supreme Court, or this Court, to preserve for federal review. These are listed verbatim in the attached appendix, along with authority he identifies as having rejected his arguments.

18

CONCURRING:

_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Philip Hall, Judge[*]

_____

[*]     Justice Andrew D. Hurwitz has recused himself from this case.    Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Philip Hall, Judge of the Arizona Court of Appeals, Division One, was designated to sit on this matter.

Appendix

Cropper seeks to preserve twelve issues for later federal review, which are listed as presented along with the authority Cropper cites as rejecting the issues:

1.    The prosecutor's discretion to seek the death penalty has no standards and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Sections 1, 4, and 15 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See State v. Sansing*, 200 Ariz. 347, ¶ 46, 26 P.3d 1118 (2001), vacated on other grounds, *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002); *State v. Rossi*, 146 Ariz. 359, 366, 706 P.2d 371, 378 (1985).

2.    Arizona's death penalty is applied so as to discriminate against poor, young, and male defendants in violation of Article 2, Sections 1, 4, and 13 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See Sansing*, at ¶ 46.

3.    The death penalty is cruel and unusual under any circumstances and violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15 of the Arizona Constitution. Appellant recognizes authority to the

contrary. *See State v. Harrod*, 200 Ariz. 309, ¶ 59, 26 P.3d 492 (2001).

4. The absence of proportionality review of death sentences by Arizona courts denies capital defendants due process of law and equal protection, and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, Section 15 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See Harrod*, at ¶ 65; *State v. Salazar*, 173 Ariz. 399, 416, 844 P.2d 566, 583 (1992).

5. Arizona's capital sentencing scheme is unconstitutional because it does not require that the State prove that the death penalty is appropriate. Failure to require this proof violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, Section 15 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See State v. Ring*, 200 Ariz. 267, ¶ 64, 25 P.3d 1139 (2001), *rev'd on other grounds*, *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002).

6. The death penalty is cruel and unusual because it is irrationally and arbitrarily imposed. The statute requires imposition of a death sentence if the jurors find one or more aggravating circumstances and no mitigating circumstances

sufficiently substantial to call for life imprisonment. Furthermore, the death penalty serves no purpose that is not adequately addressed by a sentence of life imprisonment. Therefore, it violates a defendant's right to due process under the Fourteenth Amendment to the United States Constitution and Article 2, Sections 1 and 4 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See State v. Pandeli*, 200 Ariz. 365, ¶ 88, 26 P.3d 1136 (2001); *State v. Beaty*, 158 Ariz. 232, 247, 762 P.2d 519, 534 (1988).

7. A.R.S. § 13-703 provides no objective standards to guide the jurors in weighing the aggravating and mitigating circumstances and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See Pandeli*, at ¶ 90.

8. A.R.S. § 13-703 does not sufficiently channel the sentencing jurors' discretion. Aggravating circumstances should narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a harsher penalty. The broad scope of Arizona's aggravating factors encompasses nearly anyone involved in a murder, violating the Eighth and Fourteenth Amendments to the United States Constitution and Article 2,

22

Section 15 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See Pandeli*, at ¶ 90.

9. Execution by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, and Article 2, § 15 of the Arizona Constitution. Appellant recognizes authority to the contrary. *See State v. Van Adams*, 194 Ariz. 408, ¶ 55, 984 P.2d 16 (1999).

10. A proportionality review of a defendant's death sentence is constitutionally required. Appellant recognizes authority to the contrary. *See State v. Gulbrandson*, 184 Ariz. 46, 73, 906 P.2d 579, 606 (1995).

11. Arizona's death penalty statute violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Sections 4 and 15 of the Arizona Constitution because it does not require multiple mitigating factors to be considered cumulatively or require the fact-finder to make specific findings as to each mitigating factor. Appellant recognizes authority to the contrary. *See Van Adams*, at ¶ 55.

12. Arizona's death penalty statute is constitutionally deficient because it requires defendants to prove that their lives should be spared. Appellant recognizes authority to the

contrary.  *See State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988).