IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**STATE OF ARIZONA**,
*Appellee*,

*v.*

**ROBERT ALLEN POYSON,**
*Appellant.*

———————————

No. CR-98-0510-AP
Filed November 2, 2020

———————————

Appeal from the Superior Court in Mohave County
The Honorable Steven F. Conn, Judge
No. CR-96-865

**DEATH SENTENCES AFFIRMED**

———————————

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Lacey Stover Gard, Chief Counsel, David R. Cole, Senior Litigation Counsel, Capital Litigation Section, Phoenix, Attorneys for State of Arizona

Emily Skinner, Arizona Capital Representation Project, Phoenix, Attorney for Robert Allen Poyson

———————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES GOULD, and MONTGOMERY joined[*].

_____

JUSTICE BOLICK, opinion of the Court:

¶1        The Ninth Circuit Court of Appeals found this Court erred on independent review of Robert Allen Poyson's death sentences and remanded the case to federal district court with instructions to grant a writ of habeas corpus unless the State initiates proceedings either to correct the constitutional error in Poyson's death sentences or to vacate the sentences. We granted the State's motion to conduct a new independent review and now affirm Poyson's death sentences.

## BACKGROUND

¶2        As a child, Poyson suffered delayed development, physical abuse, the tragic loss of the only true father figure he knew, and rape at the age of eleven by a family friend. Following these traumatic events, he struggled academically, abused alcohol and drugs, committed numerous juvenile offenses, failed to maintain stable employment, and ultimately ended up homeless. In 1996, Elliot and Leta Kagen met Poyson and let him stay on their remote property in Golden Valley, Arizona, for $100 a month. Poyson became angry with the Kagens after learning they charged him the entire cost of their monthly rent and, along with fellow tenants Frank Anderson and Kimberly Lane, plotted to kill the Kagens, their son, and another tenant, Roland Wear, so they could steal Wear's truck and flee to Chicago.

¶3        Poyson's first victim was Leta's son, Robert Delahunt, whom Poyson and Anderson beat and stabbed to death over the course of forty-five minutes. Poyson then killed Leta in her bed with a single shot to the face and beat Wear to death as he tried to flee. Poyson, Anderson, and Lane proceeded to steal Wear's truck and flee to Illinois, where they were arrested. *See State v. Poyson* ("*Poyson I*"), 198 Ariz. 70, 74 ¶¶ 4–6 (2000).

_____

[*] Justice John R. Lopez, IV and Justice James P. Beene have recused themselves from this case.

¶4          A jury convicted Poyson on three counts of first-degree murder. *Id.* During sentencing, the trial court found three aggravating factors beyond a reasonable doubt: (1) each murder was committed in expectation of pecuniary gain, (2) the murders of Delahunt and Wear were committed in an especially cruel manner, and (3) multiple homicides were committed. *Id.* at 78 ¶ 23. Finding only one mitigating factor, cooperation with law enforcement, the trial court sentenced Poyson to death. *Id.* at 73 ¶ 1, 81 ¶ 41.

¶5          On direct review, this Court found additional mitigating factors of age, family support, and potential for rehabilitation, but nevertheless upheld Poyson's sentence because the mitigating evidence was not sufficiently substantial to call for leniency. *Id.* at 82 ¶ 48.

¶6          In 2003, Poyson filed a petition for post-conviction relief, which the trial court denied. This Court denied his subsequent petition for review. *See Poyson v. Ryan* ("*Poyson III*"), 879 F.3d 875, 886 (9th Cir. 2018), *cert. denied*, 138 S. Ct. 2652 (2018). Poyson then filed a petition for a writ of habeas corpus in the United States District Court for the District of Arizona, which was denied. *Poyson v. Ryan* ("*Poyson II*"), 685 F. Supp. 2d 956, 961 (D. Ariz. 2010). The Ninth Circuit reversed and granted relief, concluding that habeas relief was warranted because this Court erred in its independent review of the death sentences when considering Poyson's mitigation evidence. *Poyson III*, 879 F.3d at 890–93. The Ninth Circuit reasoned that this Court's application of the "unconstitutional causal nexus test" to Poyson's mitigation evidence of a troubled childhood and mental health issues constituted error under *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and this error "had [a] 'substantial and injurious effect or influence'" on the sentencing decision. *Poyson III*, 879 F.3d at 890–93 (quoting *McKinney v. Ryan*, 813 F.3d 798, 822 (9th Cir. 2015).

¶7          Consistent with *State v. Hedlund*, 245 Ariz. 467, 470 ¶ 4 (2018), *cert. denied*, 140 S. Ct. 1270, we granted the State's motion to conduct a new independent review. We have jurisdiction under article 6, section 5(6) of the Arizona Constitution and A.R.S. §§ 13-755(A), -4031, and -4032(4).

## DISCUSSION

### I. Scope of Review

**¶8**        In granting the State's motion, we ordered the parties to submit briefing on "[w]hether the proffered mitigation is sufficiently substantial to warrant leniency in light of the existing aggravation." This order reflects that our new independent review is focused on correcting the constitutional error identified by the Ninth Circuit.  *See, e.g.*, *Hedlund*, 245 Ariz. at 470 ¶ 5.

**¶9**        The Ninth Circuit found error with our application of an unconstitutional causal nexus test to exclude Poyson's mitigating evidence of childhood abuse and mental health issues.  Thus, our independent review is limited to considering the mitigating factors without the causal nexus requirement and reweighing them against the established aggravators in this case.  *See id.*; *State v. Styers*, 227 Ariz. 186, 188 ¶ 7 (2011).

**¶10**        Poyson argues, however, that his case is non-final and therefore he should be entitled to jury resentencing under *Hurst v. Florida*, 577 U.S. 92 (2016), and *Ring v. Arizona*, 536 U.S. 584 (2002).  We recently rejected this same argument in *Hedlund*, 245 Ariz. at 470 ¶ 6, and do so again here, reaffirming the scope of review established in our prior cases.  *See, e.g.*, *State v. McKinney* ("*McKinney I*"), 245 Ariz. 225, 227 ¶ 6 (2018); *Hedlund*, 245 Ariz. at 470 ¶ 6; *Styers*, 227 Ariz. at 188 ¶ 7.

**¶11**        Poyson's case became final in 2001 after the Supreme Court denied his writ of certiorari.  *Poyson v. Arizona*, 531 U.S. 1165 (2001).  *See Styers*, 227 Ariz. at 187 ¶ 5 (finding a "case is final when 'a judgment of conviction has been rendered, the availability of appeal exhausted, and . . . a petition for certiorari finally denied . . . .'" (quoting *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987))).  As such, Poyson's case is here on collateral review.  *See McKinney v. Arizona* ("*McKinney II*"), 140 S. Ct. 702, 708 (2020) ("As a matter of *state* law, the reweighing proceeding in McKinney's case occurred on collateral review.").  Because his case became final before *Ring* and *Hurst* were decided, Poyson is not entitled to the benefit of jury resentencing in this collateral proceeding.  *See id.* ("*Ring* and *Hurst* do not apply retroactively on collateral review."); *Hedlund*, 245 Ariz. at 470 ¶ 6 (holding that jury resentencing proceedings under *Ring* do not apply to cases deemed final).

4

¶12 Finally, for the same reasons as in *Hedlund*, we decline Poyson's invitation to consider evidence developed after the original proceedings as part of our independent review. *Hedlund*, 245 Ariz. at 470–71 ¶ 9 ("[A]dditional evidence should be admitted first in the trial court rather than in this Court.").

## II. Independent Review

¶13 In 2000, this Court upheld Poyson's death sentences, finding that the mitigation evidence was not "sufficiently substantial to call for leniency." *Poyson I*, 198 Ariz. at 82 ¶ 48. However, the Ninth Circuit concluded this Court failed to consider mitigating evidence that was not causally related to Poyson's crimes. *Poyson III*, 879 F.3d at 889. Accordingly, we conduct a new independent review of the mitigation evidence and balance it against the aggravators.

**Aggravator**

¶14 The jury found, and this Court agreed on direct review, that the State proved the existence of three statutory aggravators: A.R.S. § 13-703(F)(5) (murder committed for pecuniary gain); -703(F)(6) (murder committed in an especially cruel manner); and -703(F)(8) (multiple murders committed).[1] *Poyson I*, 198 Ariz. at 81 ¶ 40.

¶15 Poyson challenges the trial court's finding of the (F)(5) and (F)(8) aggravators, arguing they were not proven beyond a reasonable doubt and that the plain language of § 13-755 requires us to reconsider aggravating factors in our independent review. Because the Ninth Circuit found no error in the aggravating factors, we reject this argument. *See Hedlund*, 245 Ariz. at 470 ¶ 5 (review limited to mitigating factors and reweighing them against the established aggravators); *Styers*, 227 Ariz. at 188 ¶ 7 ("Because no error was found regarding these aggravating factors, in this independent review we deem those factors established.").

---

[1] After Poyson's sentencing, Arizona's capital sentencing statutes were reorganized and renumbered as A.R.S. §§ 13-751 to -759 (2009). 2008 Ariz. Sess. Laws, ch. 301, §§ 26, 38–41 (2d Reg. Sess.). We cite to the previous versions, as used in Poyson's sentencing, for consistency.

**Mitigating Factors**

**¶16**        Poyson "has the burden of proving mitigating factors by a preponderance of the evidence." *Hedlund*, 245 Ariz. at 471 ¶ 12. "When he fails to do so, the asserted mitigation is entitled to no weight." *Id.* When assessing the weight and quality of a mitigating factor, we can consider how the mitigating factor relates to the offense. *Styers*, 227 Ariz. at 189 ¶ 12. This Court will consider all mitigating evidence presented without requiring a causal nexus between the evidence and the crime. But "we may consider the failure to show such a connection as we assess 'the quality and strength of the mitigation evidence,'" and may attribute less mitigating weight to evidence that lacks a connection to the crime. *Id.* (quoting *State v. Newell*, 212 Ariz. 389, 405 ¶ 82 (2006)); *see also Poyson III*, 879 F.3d at 888.

**¶17**        In this proceeding, Poyson claims the existence of two statutory mitigating factors and six non-statutory mitigating factors. For each, we determine if the factor has been proved by a preponderance of the evidence and then assign mitigating weight to that factor. In so doing, we consider only the evidence presented at sentencing.

        A. Impairment

**¶18**        Poyson claims the existence of the statutory mitigator of impairment as well as non-statutory mitigating factors of substance abuse and mental health issues. Because all these mitigating factors deal with some aspect of the defendant's impairment, we address them together.

**¶19**        Impairment is a statutory mitigator when "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13-751(G)(1). Personality or character disorders do not typically satisfy this statutory mitigator. *State v. Medina*, 232 Ariz. 391, 412 ¶ 103 (2013). Yet even when mental health issues or substance abuse fail to satisfy this statutory mitigator, we often consider such evidence as non-statutory mitigation. *State v. Prince*, 226 Ariz. 516, 542 ¶ 113 (2011); *State v. Moore*, 222 Ariz. 1, 21 ¶ 121 (2009).

¶20 Substance abuse and mental health issues are entitled to little weight when there is no connection to the crime and no effect on the defendant's ability to conform to the requirements of the law or appreciate the wrongfulness of his conduct. *Prince*, 226 Ariz. at 542 ¶ 113 (noting mental health mitigation is weighed in proportion to the defendant's ability to conform or appreciate the wrongfulness of his conduct); *State v. Garcia*, 224 Ariz. 1, 22 ¶ 104 (2010) (finding evidence of long-term drug addiction entitled to little weight because no connection to crime or mental function at time of murder).

¶21 We will not find that a defendant's ability to conform or appreciate the wrongfulness of his conduct was impaired when the defendant's actions were planned and deliberate, or when the defendant seeks to cover up his crime. *See Hedlund*, 245 Ariz. at 472–73 ¶ 20 (finding that evidence showing the defendant "acted lucidly in planning and executing the crimes and in attempting to dispose of and hide the murder weapon" undermines arguments of significant impairment); *McKinney I*, 245 Ariz. at 227 ¶ 10 (finding PTSD mitigation evidence insufficiently substantial to warrant leniency when defendant's actions during the murder were "planned and deliberate"); *State v. Bocharski*, 218 Ariz. 476, 499 ¶ 111 (2008) (finding weight of defendant's alcohol impairment weakened by his "purposeful steps to avoid prosecution"); *State v. Rienhardt*, 190 Ariz. 579, 591–92 (1997) ("[A] defendant's claim of alcohol or drug impairment fails when . . . the defendant took steps to avoid prosecution shortly after the murder, or when it appears that intoxication did not overwhelm the defendant's ability to control his physical behavior.").

¶22 On direct review, we agreed with the trial court's conclusion that Poyson did not prove the statutory impairment mitigator, finding "scant evidence that [Poyson] was actually intoxicated on the day of the murders." *Poyson I*, 198 Ariz. at 79 ¶ 32. We also found Poyson's mental health issues did not control his conduct or impair his judgment and therefore afforded them no mitigating weight. *Id.* at 81–82 ¶ 43.

¶23 As an initial matter, we reaffirm our finding that Poyson failed to prove the existence of the (G)(1) statutory impairment mitigator. Our independent review similarly finds "scant evidence" of Poyson's intoxication at the time of the murders. Although Poyson drank heavily the night before the murders, he did not drink the day of the murders. On the day of the murders, Poyson smoked marijuana to allay the effects of his

hangover and claimed he had a PCP "flashback" during the murder of Delahunt. But as we determined in our direct review, this evidence is insufficient to show Poyson was substantially impaired when he murdered Delahunt, Leta, and Wear. Poyson exhibited numerous examples of "goal-oriented" behavior that belie a claim of substantial impairment. Indeed, Poyson took preparatory steps, such as cutting the telephone wires to prevent calls for help, checking the murder weapon to ensure proper functioning, and obtaining bullets beforehand. Additionally, he made conscious attempts to conceal his crimes after the fact, such as covering Wear's body with debris. These deliberate actions indicate that Poyson's drug and alcohol use neither rendered him unable to conform his conduct to the requirements of the law nor left him unable to appreciate the wrongfulness of his actions.

¶24        Poyson also provided evidence of long-term substance abuse and mental health issues. As an adolescent, he had "a clear and chronic history of substance abuse." Before trial, he was variously diagnosed with depression, polysubstance dependence, and antisocial personality disorder. Dr. Celia Drake, who conducted a forensic evaluation of Poyson, concluded that "there are a multitude of factors which have predisposed Robert Poyson to his history of delinquency and subsequent criminal acts." Thus, the evidence shows that Poyson suffered from mental health issues, and we find the non-statutory mitigating factor established. *See Prince*, 226 Ariz. at 542 ¶ 114. Nevertheless, no evidence developed at trial suggests that Poyson's mental health issues significantly impaired his capacity to conform his behavior to the law or appreciate the wrongfulness of his conduct. As explained above, *supra* ¶ 23, Poyson took deliberate and calculated steps to ensure that his murderous plot and flight from Golden Valley would be successful and that he would avoid capture by law enforcement. Moreover, Poyson's own statements demonstrate he knew his actions were wrong, morally and legally. Accordingly, we assign little weight to this mitigation evidence.

¶25        Ultimately, despite some evidence of drug abuse and his mental health issues, the record indicates Poyson was capable of conforming to the law and appreciated the wrongfulness of his conduct. His actions were not intoxicated and impulsive but constituted a planned and deliberate attack on his three victims over the course of a night. And despite his low intelligence, he was able to flee across the country and

8

briefly evade capture by law enforcement. As a result, we give little weight to his drug use or mental health issues as mitigation evidence.

### B. Age

**¶26** Poyson was nineteen years old at the time of the murders. A defendant's age can be a statutory mitigating factor. A.R.S. § 13-751(G)(5). The mitigating weight of a defendant's age depends upon the "defendant's level of intelligence, maturity, involvement in the crime, and past experience." *McKinney I*, 245 Ariz. at 227 ¶ 11 (quoting *State v. Jackson*, 186 Ariz. 20, 30 (1996)). As such, the mitigating weight is less when the defendant was a major participant in the crime or has a substantial criminal history. *Id.* at 227–28 ¶¶ 11–12 (attributing little mitigating weight to twenty-three-year-old defendant who took a leading role in executing and planning burglaries leading to murder); *State v. Hargrave*, 225 Ariz. 1, 18 ¶ 80 (2010) ("We discount age as a mitigating factor when the defendant had a significant criminal record or actively participated in the murders."); *State v. Womble*, 225 Ariz. 91, 104 ¶¶ 57–58 (2010) (finding significance of a nineteen-year-old defendant diminished when he is a major participant and helps plan the crime in advance).

**¶27** While the trial court found Poyson failed to establish the (G)(5) mitigator, this Court attributed some mitigating weight to this factor on direct review. *Poyson I*, 198 Ariz. at 81 ¶ 39. However, this weight was ultimately diminished by Poyson's criminal history, as well as his extensive participation in these crimes. *Id.* A review of the record leads us to conclude the same today.

**¶28** First, Poyson had a long history of adjudicated offenses as a juvenile, including sexual assault of a minor and multiple violent offenses. Second, despite Poyson now claiming he was manipulated by Anderson, his own testimony clearly demonstrates he was a major participant in the murders of Delahunt, Leta, and Wear. Regarding the murder plans, he claimed, "I came up with most of it but [Anderson] came up with a little bit." Poyson was the one who searched for murder weapons beforehand and who devised a plan to goad Anderson into killing Delahunt when Anderson hesitated. Ultimately, Poyson delivered the fatal blow to each of his victims.

¶29        Given Poyson's substantial role in these murders and his previous juvenile offenses, we afford his age little mitigating weight.

### C. Abusive Childhood

¶30        When childhood abuse is established by a preponderance of the evidence, its mitigating weight depends on the age of the defendant at the time of the murder and the causal connection between the abuse and crime committed. *Prince*, 226 Ariz. at 541 ¶ 109. The mitigating weight of childhood abuse may diminish as a defendant ages. *See State v. Hidalgo*, 241 Ariz. 543, 558 ¶ 68 (2017) (defendant did not "convincingly" explain how admittedly "cruel and traumatic" childhood conditions caused murders committed by twenty-three-year-old adult). The mitigating weight of childhood abuse is also reduced when there is no causal link between the abuse and the murder. *Hedlund*, 245 Ariz. at 473 ¶ 25 (assigning evidence of defendant's abusive childhood little weight when it did not affect defendant's ability to conform his behavior to the law or render him "unable to differentiate right from wrong"). And evidence that murders were planned or deliberate and not motivated by passion or rage decreases the mitigating effect of prior childhood abuse. *State v. Cropper*, 223 Ariz. 522, 529 ¶ 30 (2010); *State v. Armstrong*, 218 Ariz. 451, 465 ¶¶ 75–76 (2008).

¶31        The trial court found Poyson proved he suffered from a dysfunctional childhood, physical abuse, mental abuse, neglect, sexual abuse, and family tragedy. The record establishes that as a child, Poyson was subjected to physical abuse by his caregivers, was forced to consume alcohol at the age of three or four, was raped at eleven years old by a family friend, and had an unstable childhood with multiple stepfathers. Following the suicide of a stepfather he had grown close to and the sexual assault, Poyson began to struggle academically, frequently got into trouble, and started drinking alcohol. Evaluations taken while he was a juvenile and undergoing treatment attributed his antisocial behavior to his chaotic upbringing and childhood abuse. During trial, Poyson introduced a report from Dr. Drake, who attributed his behavioral problems and need for attention to his inconsistent parenting and the lack of treatment he received as a juvenile.

¶32        Because Poyson was only nineteen when he committed the triple murder, the childhood abuse he endured is temporally proximate to

his crimes. However, the causal link is weak. While Poyson's situation and mental health issues may be attributed to his childhood abuse, any connection is weakened by the fact that the murders were not spontaneous or motivated by rage or passion but were planned, deliberate, and calculated. Poyson planned the murders ahead of time with Anderson and Lane. He engaged in planning and preparation by finding ammunition to use, disabling the Kagens' telephone so they could not call for help, and tricking Delahunt to join in their plan so he would not expose them. Even after the murders, Poyson demonstrated his ability to appreciate the wrongfulness of his conduct was not impaired by seeking to conceal Wear's body and suggesting Anderson get rid of Wear's truck so they would not be caught.

¶33　　　　While Poyson's abusive childhood is given some mitigating weight because of his age, its weight is not substantial because Poyson has not proved his abuse impacted his ability to conform his behavior to follow the law or to know right from wrong.

### D. Remorse and Cooperation with Law Enforcement

¶34　　　　When established, the presence of remorse can serve as a non-statutory mitigating factor, *Prince*, 226 Ariz. at 543 ¶ 121, as can admissions of guilt or cooperation with law enforcement. *State v. Miller*, 186 Ariz. 314, 326 (1996). But when the sincerity of the remorse is in question, its mitigating weight is reduced. *Medina*, 232 Ariz. at 413 ¶¶ 112–113 (finding sincerity of defendant's remorse doubtful when grounded in fear of being caught); *Cropper*, 223 Ariz. at 529 ¶¶ 27–28 (sincerity of remorse doubted when defendant's behavior contradicted his expressions of remorse). Similarly, admissions of guilt or cooperation with law enforcement are afforded little mitigating weight when the defendant has nothing to lose by cooperating or confessing. *See, e.g.*, *State v. Murdaugh*, 209 Ariz. 19, 36 ¶ 84 (2004) (concluding evidence of cooperation entitled to little mitigating weight when defendant agreed to cooperate only after learning police found the crime scene).

¶35　　　　During sentencing, the trial court found Poyson established he was remorseful by a preponderance of the evidence but that his remorse was not mitigating because it did not stop him from going through with a

procession of murders and did not lead him to turn himself in.  On direct review, this Court agreed.  *Poyson I*, 198 Ariz. at 82 ¶ 45.

¶36          In fact, the record is replete with evidence that Poyson had some remorse for the murders he committed.  Poyson stated he had second thoughts about going through with it, even at the beginning of the spree while killing Delahunt, until Anderson talked him back into it.  During his interview with police, Poyson explicitly expressed remorse for what he had done, especially as to the murder of Delahunt, with whom he had a particularly close relationship.  Both officers who interviewed Poyson, as well as his mitigation specialist, testified that they believe Poyson had remorse for what he did.  Ultimately, Poyson's remorse is mitigating but pales in significance when compared to the strong aggravating factors.

¶37          Regarding Poyson's cooperation with law enforcement, both the trial court and this Court on direct review found his cooperation to be mitigating.  *Id.* ¶ 48.  The record demonstrates that while on the run with Anderson and Lane, Poyson wanted to turn himself in.  But once he was finally apprehended, he initially falsely downplayed Lane's involvement in the murders while confessing to his part in the murders.  Given that Poyson had little to gain from not cooperating and that he originally sought to conceal Lane's involvement in the murders, his confessions and cooperation are given little mitigating weight.

### E. Potential for Rehabilitation and Good Behavior

¶38          The potential for rehabilitation can be considered a mitigating factor.  *State v. Villalobos*, 225 Ariz. 74, 82 ¶ 34 (2010).  During sentencing, the trial court determined there was insufficient evidence to prove this as a mitigating factor.  But on direct review, this Court disagreed and found the rehabilitation factor was entitled to some mitigating weight because expert testimony showed Poyson was able to be rehabilitated in institutional settings.  *Poyson I*, 198 Ariz. at 82 ¶ 46.  We find no reason to disagree with that conclusion.

¶39          Although we do not consider evidence that was not before the trial court on direct review, Poyson now wants us to consider the mitigating weight of his good behavior in prison and his status as a model inmate.  He cites *Skipper v. South Carolina*, 476 U.S. 1, 7 (1986), for the premise that this

Court cannot exclude and refuse to consider evidence of good behavior in prison. Poyson also cites our previous decision in *State v. Richmond*, where we found that the defendant's good behavior in prison was sufficiently mitigating to warrant leniency. 180 Ariz. 573, 580–81 (1994), *abrogated on other grounds by State v. Mata*, 185 Ariz. 319 (1996). Yet *Richmond* is distinguishable. The procedural posture of *Richmond* was significantly different; the Court was considering evidence presented in a prior resentencing, not new evidence developed in post-conviction proceedings. *See id.* at 580 n.8. Moreover, the defendant presented "quite persuasive and most unusual" testimony from guards and prison counselors who gave specific examples about how the defendant had gone out of his way to better not only himself but also the lives of his fellow inmates. *Id.* at 580–81. Here, Poyson has not presented such compelling evidence of reform beyond being a model prisoner. Furthermore, in more recent cases, this Court has assigned very little mitigating weight to good behavior because inmates are expected to be good. *See, e.g.*, *State v. Payne*, 233 Ariz. 484, 518 ¶ 157 (2013); *State v. Kiles*, 222 Ariz. 25, 42 ¶ 89 (2009); *State v. Dann*, 220 Ariz. 351, 375 ¶ 141 (2009). Thus, even if we consider Poyson's good behavior in prison to be mitigating, we would only assign it minimal weight.

### F. Family Support

**¶40** Family ties and support may be mitigating, but general statements of support are entitled to little weight. *Medina*, 232 Ariz. at 413 ¶ 111; *State v. Jones*, 197 Ariz. 290, 313 ¶ 77 (2000). While the trial court found Poyson failed to establish meaningful family support, on direct review this Court found evidence of family support from the testimony, cooperation, and written letters of Poyson's relatives but accorded it minimal mitigating weight. *Poyson I*, 198 Ariz. at 82 ¶ 47. We do the same today.

**Leniency is Not Warranted**

**¶41** When conducting independent review, "we must consider the aggravator[s] . . . and all mitigating evidence presented to determine whether the mitigation evidence individually or cumulatively is sufficiently substantial to call for leniency." *Hedlund*, 245 Ariz. at 475 ¶ 34.

"We consider the quality and the strength, not simply the number, of aggravating and mitigating factors." *Hidalgo*, 241 Ariz. at 558 ¶ 69.

¶42 Here, all three aggravating factors are particularly weighty. The cruelty aggravator is "entitled to great weight." *McKinney I*, 245 Ariz. at 228 ¶ 15. The evidence of the prolonged and brutal way Poyson murdered both Delahunt and Wear strongly supports assigning considerable weight to this aggravator. The pecuniary gain aggravator is also especially strong and "weighs heavily in favor of a death sentence," *id.* ¶ 14, when pecuniary gain is the "catalyst for the entire chain of events leading to the murders." *State v. McKinney*, 185 Ariz. 567, 584 (1996). *See also Hedlund*, 245 Ariz. at 475 ¶ 34. Given that the murders of Delahunt, Leta, and Wear were not simply incidental to the stealing of Wear's truck but were an integral part of the plan, the pecuniary gain aggravator is especially strong here.

¶43 Of the three aggravators, the strongest is the multiple homicides aggravator. Compared to other aggravators, we have consistently given "extraordinary weight" to this aggravator. *See, e.g.*, *Hidalgo*, 241 Ariz. at 558 ¶ 69; *State v. Garza*, 216 Ariz. 56, 72 ¶ 81 (2007). Even when the multiple homicides aggravator is the only aggravator weighed against multiple mitigating factors, we have found the mitigation insufficient to warrant leniency. *See, e.g.*, *Moore*, 222 Ariz. at 23 ¶¶ 137–38 (finding significant mitigating evidence of age and drug abuse insufficient to warrant leniency in light of multiple murders aggravator); *Dann*, 220 Ariz. at 376–77 ¶¶ 137–39, 145–49, 152 (finding mitigating evidence of childhood abuse, impairment, and family support insufficient to warrant leniency in light of sole aggravator of multiple murders); *Armstrong*, 218 Ariz. at 466 ¶ 83–84 (similar).

¶44 In arguing for leniency, Poyson likens his case to three decisions where we reduced the death sentence to a life sentence: *Bocharski*; *State v. Roque*, 213 Ariz. 193 (2006); and *Richmond*. Yet these cases can easily be distinguished. First, unlike Poyson, all the defendants in these cases were convicted and sentenced for only one count of murder and did not have the multiple murder aggravator. *Bocharski*, 218 Ariz. at 481 ¶ 1; *Roque*, 213 Ariz. at 203 ¶ 9; *Richmond*, 180 Ariz. at 575. Considering the extraordinary weight we apply to this aggravator, this is a significant difference. Second, each of these cases involve the presence of only one

14

aggravator, unlike Poyson's case involving three, and none of the aggravators in Poyson's case are present in these other cases. *Bocharski*, 218 Ariz. at 499 ¶ 112; *Roque*, 213 Ariz. at 231 ¶ 170; *Richmond*, 180 Ariz. at 580.

¶45 Finally, the mitigating evidence in these other cases had much more support and weight than the evidence Poyson presented. In *Bocharski*, we noted how the evidence of the defendant's childhood abuse was unique in its depth and that experts specifically testified that the defendant's childhood abuse helped cause the defendant to commit murder. 218 Ariz. at 498–99 ¶¶ 109–10. Unlike *Bocharski*, Poyson had no expert testify in definite terms as to whether his childhood abuse would have caused him to commit murder. In *Roque*, we gave substantial mitigating weight to the defendant's mental health issues, as all four mental health experts who testified agreed his mental health issues impaired his capacity to conform with the law. 213 Ariz. at 230–31 ¶ 168. In addition to Poyson lacking such a definite diagnosis, the record actually demonstrates that Poyson's capacity to conform to the law was not impaired. And in *Richmond*, we found the defendant's reformation in prison to be mitigating as the defendant presented substantial evidence of how he bettered himself and the lives of other inmates from both prison counselors and guards. 180 Ariz. at 580–81. But beyond some evidence of self-improvement and a light disciplinary history, Poyson has not presented any similar substantial evidence.

¶46 Having considered all the mitigating evidence, we conclude it is not sufficient to warrant leniency in light of the three aggravators proven by the State, especially given the extraordinary weight of the multiple murders aggravator and the particular weightiness of the other two aggravators. *See McKinney I*, 245 Ariz. at 227 ¶¶ 7–10 (affirming defendant's death sentence upon weighing pecuniary gain and especially cruel aggravators against childhood abuse and mental health mitigators); *Hargrave*, 225 Ariz. at 19 ¶ 86 (affirming defendant's death sentence involving same three aggravators as Poyson); *State v. Boggs*, 218 Ariz. 325, 340–342 ¶¶ 73–83, 344 ¶¶ 94–95 (2008) (affirming death sentence in light of same three aggravators weighed against similar mitigation evidence).

## CONCLUSION

¶47 We affirm Poyson's death sentences.