IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA**,
*Appellee*,

*v.*

**CHRISTOPHER JOHN SPREITZ**,
*Appellant*.

No. CR-94-0454-AP
Filed January 6, 2025

Appeal from the Superior Court in Pima County
The Honorable William N. Sherrill
No. CR-27745
**AFFIRMED**

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Jason D. Lewis, Capital Litigation Section Chief, Jeffrey L. Sparks, Senior Litigation Counsel, Andrew B. Dysart, Assistant Attorney General, Tucson, Attorneys for State of Arizona

David J. Euchner, Erin K. Sutherland, Deputy Public Defenders, Pima County Public Defender's Office, Tucson, Attorneys for Christopher J. Spreitz

JUSTICE MONTGOMERY authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, JUSTICES BOLICK, KING, and BRUTINEL (RETIRED) joined.[*]

JUSTICE MONTGOMERY, Opinion of the Court:

¶1 This Court affirmed on direct appeal Christopher Spreitz's sentence of death for the murder of Ruby Reid after conducting an independent review of aggravating and mitigating circumstances. *State v. Spreitz* ("*Spreitz I*"), 190 Ariz. 129, 152 (1997). After the federal district court denied Spreitz's petition for habeas corpus, a divided panel of the Ninth Circuit Court of Appeals reversed in part, concluding that this Court applied an unconstitutional "causal nexus" test and therefore did not properly consider evidence of Spreitz's longstanding alcohol and substance abuse as non-statutory mitigation. *Spreitz v. Ryan*, 916 F.3d 1262, 1276, 1281 (9th Cir. 2019). The Ninth Circuit then remanded the case with instructions to the district court. *Id.* at 1281.

¶2 The State then filed a motion asking us to conduct a new independent review, which we granted. We have thoroughly reviewed the entire record and considered the mitigation evidence proffered by Spreitz at his original sentencing proceeding, including evidence of longstanding alcohol and substance abuse, and now affirm the sentence of death.

## BACKGROUND

¶3 In 1994, a jury found Spreitz guilty of the first degree murder (premediated and felony murder), sexual assault, and kidnapping of Ruby Reid. *Spreitz I*, 190 Ariz. at 135. Reid was last seen leaving a bar in Tucson alone and on foot at approximately 11:30 p.m. *Id.* at 133. Spreitz "claimed that he 'picked up' Ms. Reid at a convenience store and that she voluntarily went with him, intending to 'party.'" *Id.* at 134. He ultimately murdered her in a desert area outside Tucson sometime between 11:30 p.m. on May 18 and 1:45 a.m. on May 19, 1989. *Id.* at 133–34. Reid's body was not found until several days later on May 22. *Id.* at 134.

---

[*] Although Justice Brutinel retired prior to the issuance of this Opinion, he participated in the decision of the Court. Justices John R. Lopez and James P. Beene are recused.

Although her body was in an advanced state of decomposition and the full extent of her injuries could not be discerned, the medical examiner identified multiple injuries to Reid's body, "includ[ing]: bruising on the legs, arms, and back; bruising and abrasions on the buttocks; several broken ribs; internal bleeding; a broken jaw; several head lacerations; and a skull fracture where the skull had been 'shoved in.'" *Id.* Spreitz admitted in a post-*Miranda* interview "that he hit Ms. Reid in the head with a rock more than once to make her stop yelling." *Id.*

¶4 After the jury returned its guilty verdicts, the trial court conducted an aggravation-mitigation hearing and found one aggravating circumstance concerning the murder: that Spreitz murdered Reid in an especially cruel manner. *Id.* at 135; *see also* A.R.S. § 13-703(F)(6) (1994). As non-statutory mitigation, the court found "that [Spreitz] was raised in a 'sub-normal' home environment, that he had been emotionally immature at age twenty-two when the crime was committed but had shown emotional growth while in confinement, that he had no prior felonies, and that he was capable of rehabilitation." *Spreitz I*, 190 Ariz. at 135. Following consideration of the respective aggravating and mitigating circumstances, the court determined "that the especially cruel manner in which the victim died substantially outweighed all mitigating factors, whether considered separately or together" and imposed a sentence of death. *Id.*

¶5 On direct appeal, this Court conducted an independent review, examining the entirety of the record and reweighing the applicable aggravating and mitigating circumstances, and found that the especially cruel aggravating circumstance of Spreitz's murder of Reid outweighed all mitigating factors in favor of leniency. *Id.* at 147–51. The Court therefore affirmed Spreitz's death sentence. *Id.* at 152. Spreitz then filed a petition for writ of certiorari to the Federal Supreme Court, which was denied. *Spreitz v. Arizona*, 523 U.S. 1027 (1998). Spreitz thereafter filed a petition for post-conviction relief ("PCR"), which the trial court denied. *State v. Spreitz* ("*Spreitz II*"), 202 Ariz. 1, 1–2 ¶ 3 (2002). This Court affirmed the denial. *Id.* at 3 ¶¶ 10, 12 (concluding that, although the trial court incorrectly determined ineffective assistance of counsel claims were waived for PCR review, the court's alternative substantive findings regarding ineffective assistance were correct).

**¶6**             In 2003, Spreitz petitioned the United States District Court for the District of Arizona for a writ of habeas corpus. *Spreitz v. Ryan*, 617 F. Supp. 2d 887, 897 (D. Ariz. 2009). Finding he was not entitled to habeas relief on any of his claims, the court denied his petition in 2009. *Id.* at 937. In 2019, a divided panel of the Ninth Circuit disagreed with the district court, determining that this Court violated *Eddings v. Oklahoma*, 455 U.S. 104 (1982), by "impermissibly requiring that Spreitz establish a causal connection between his longstanding substance abuse and the murder before considering and weighing the evidence as a non[-]statutory mitigating factor." *Spreitz*, 916 F.3d at 1273.[1] The court remanded the case to the district court "with instructions to grant the writ with respect to Spreitz's sentence unless the state, within a reasonable period, either corrects the constitutional error in his death sentence or vacates the sentence and imposes a lesser sentence consistent with the law." *Id.* at 1281.

**¶7**             The State thereafter filed a motion requesting that we undertake a new independent review and reweigh aggravating and mitigating circumstances. Spreitz filed a combined motion opposing the State's request and seeking a remand to the superior court for resentencing or for an evidentiary hearing. We denied Spreitz's request to remand the matter to the superior court and, consistent with *State v. Styers*, 227 Ariz. 186, 187 ¶ 7 (2011) and *State v. Hedlund*, 245 Ariz. 467, 470 ¶ 4 (2018), we granted the State's motion. *State v. Spreitz*, No. CR-94-0454-AP (Ariz. Jan. 5, 2021) (order). We have jurisdiction pursuant to article 6, section 5(6) of the Arizona Constitution and A.R.S. §§ 13-755(A), -4031, and -4032(4).

## DISCUSSION

### A. Scope Of Review

**¶8**             In conjunction with granting the State's motion for independent review, we ordered the parties to brief "[w]hether the mitigation proffered at sentencing is sufficiently substantial to warrant leniency in light of the existing aggravation." Thus, our review is limited to considering the mitigating circumstances previously presented at

---

[1]  The dissent concluded that this Court committed no *Eddings* error and that, even if we had, any such error would be harmless. *See Spreitz*, 916 F.3d at 1282–98 (Tallman, J., dissenting).

sentencing without requiring any causal nexus to the murder and then reweighing them against the established especially cruel aggravating circumstance. *See Styers*, 227 Ariz. at 188 ¶ 7, 189 ¶ 12. In other words, "our new independent review is focused on correcting the constitutional error identified by the Ninth Circuit." *State v. Poyson* ("*Poyson II*"), 250 Ariz. 48, 51 ¶ 8 (2020). Accordingly, we will not "consider evidence developed after the original proceedings as part of our independent review." *Id.* at 52 ¶ 12; *see also McKinney v. Arizona*, 589 U.S. 139, 143–45 (2020) (discussing reweighing of aggravating and mitigating circumstances after remand for *Eddings* error, which is not a "resentencing"); *Hedlund*, 245 Ariz. at 471 ¶ 10 (noting a defendant "should seek additional PCR if he believes the evidence he presented in the federal habeas proceedings entitles him to it").

## B. Independent Review

**¶9** In reviewing Spreitz's death sentence, we "independently review the trial court's findings of aggravation and mitigation and the propriety of the death sentence." § 13-755(A); *see also State v. Lynch*, 238 Ariz. 84, 106 ¶ 79 (2015) (noting that this Court "independently review[s] the trial court's findings of aggravation and mitigation and the propriety of the death sentence . . . de novo" (internal quotation marks and citation omitted)), *rev'd on other grounds*, *Lynch v. Arizona*, 578 U.S. 613 (2016).[2]

### 1. Aggravating circumstance

**¶10** The Ninth Circuit did not disturb the especially cruel aggravating circumstance determined by the trial court and affirmed by this Court. *See Spreitz*, 916 F.3d at 1281. Nonetheless, we set forth the evidence in the record of especial cruelty for purposes of our independent determination of the propriety of the death sentence.

---

[2] For a sentence of death imposed after 2002, we "review . . . to determine whether the trier of fact *abused its discretion* in finding aggravating circumstances and imposing a sentence of death." A.R.S. § 13-756(A) (emphasis added). Because the trial court imposed Spreitz's sentence before 2002, that is not the standard of our review here.

¶11    Spreitz argues that the aggravating circumstance should be given less weight in our independent review.   Relatedly, he argues that his "case falls squarely on the 'close call' side of the continuum; it is arguably the weakest evidence for especial cruelty out of all cases in which the factor was upheld on direct appeal.   Thus, the factor should be afforded minimal weight."   We do not conduct proportionality reviews.   *State v. Salazar*, 173 Ariz. 399, 416 (1992) (observing that "[i]n addition to the lack of any applicable constitutional provision, no statute requires or suggests proportionality reviews in death cases").   Instead, we must "render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime."   *Kansas v. Marsh*, 548 U.S. 163, 174 (2006); *see also State v. Nordstrom*, 230 Ariz. 110, 114 ¶ 10 (2012).

¶12    The trial court found that the aggravating circumstance of especially cruel was proved beyond a reasonable doubt based on Spreitz's confession and evidence at the crime scene:

> Physical evidence at the scene corroborated defendant's confession. The victim's clothing, including her torn brassiere, was strewn in one area of the murder scene. Photographs of the area vividly depict drag marks running from this area to the spot where the victim and the bloody rocks were found. The court also considered significant to its finding of mental anguish that the victim defecated in and on her clothing.

*Spreitz I*, 190 Ariz. at 147–48.   This Court affirmed the finding of especially cruel on direct appeal and also rejected Spreitz's argument that it was plausible that Reid was unconscious before she suffered any other injuries, noting his admission that "he beat [Reid] *as she fought back* and hit her with the rock *when she would not stop yelling*."   *Id.* at 148 (emphasis in original).

¶13    In our independent review, we note that the trial court concluded from the evidence that this was a "classical [sic] or common law kidnapping that [Reid] was picked up at some point in the city . . . put in the trunk of Spreitz's automobile and may have been beaten at that point." The court also found that Reid "was a relatively small, slim person of five

feet or less in height, while [Spreitz] is a man six feet tall in the neighborhood of two hundred pounds." This physical disparity contextualizes the injuries Spreitz inflicted on Reid, which included: eighteen bruises all over Reid's body; five fractured ribs over the front right side of her chest; bleeding in her abdomen and around the left side of the colon; an additional abdominal injury equivalent to a fall from a second story window; a fracture of the left side of her jaw described as a "crack through it"; and multiple tears and lacerations to the back of her head in addition to the fractures in her skull. We likewise note that Spreitz dragged Reid thirty feet to where her body was found next to the bloody rocks.

¶14        Whether during the drive to the desert, the initial beating, the sexual assault, while she was being dragged to where her body was discovered, or while she was being beaten in the head with rocks, there was ample time during which Reid was consciously suffering. *See State v. Trostle*, 191 Ariz. 4, 18 (1997) (considering circumstances in which "the victim suffered extreme mental distress" in discussing especially cruel aggravator); *State v. Goudeau*, 239 Ariz. 421, 464 ¶¶ 185–86 (2016) (finding "more than fifteen seconds" where victim "begged to be let go and screamed" sufficient for a finding of especially cruel). And the evidence of her injuries underscores the degree of suffering Reid endured while being beaten by a much larger man. *See State v. Tucker*, 205 Ariz. 157, 168–69 ¶ 61 (2003) (noting extent of injuries and circumstances of murder in discussing especially cruel aggravator). Accordingly, the especially cruel aggravator is particularly strong and "is entitled to great weight." *State v. McKinney*, 245 Ariz. 225, 228 ¶ 15 (2018); *see also Poyson II*, 250 Ariz. at 57 ¶ 42 (same).

### 2.  Mitigating Circumstances

¶15        At sentencing, Spreitz presented evidence of several statutory and non-statutory mitigating factors: (1) age at the time of the murder, § 13-703(G)(5) (1994); (2) impaired capacity to appreciate the wrongfulness of his conduct, § 13-703(G)(1) (1994); (3) history of alcohol and drug abuse; (4) dysfunctional family life and lack of socialization; (5) expressions of remorse; (6) lack of adult convictions; (7) no prior record of violent tendencies; and (8) good behavior while incarcerated. *Spreitz I*, 190 Ariz. at 148. Spreitz now asserts that the record supports additional non-statutory mitigating circumstances consisting of personal

7

fragmentation and disorganized thought process, good character, family support, adoption of new goals, and an implied recommendation of leniency in the presentence report.

¶16 Spreitz must establish the existence of any statutory and non-statutory mitigating circumstances by a preponderance of the evidence. *State v. Ramirez*, 178 Ariz. 116, 131 (1994). "For each [mitigating circumstance], we determine if [it] has been proved by a preponderance of the evidence and then assign mitigating weight . . . . In so doing, we consider only the evidence presented at sentencing." *Poyson II*, 250 Ariz. at 53 ¶ 17. Additionally, "[w]e must consider and weigh all mitigation evidence regardless of whether it bears a causal nexus to the underlying murder[]." *McKinney*, 245 Ariz. at 227 ¶ 6; *see also Hedlund*, 245 Ariz. at 471 ¶ 15 ("[T]his Court will consider all mitigating evidence presented without requiring a causal nexus between the mitigating evidence and the crime . . . ."); *Poyson II*, 250 Ariz. at 51 ¶ 9 (same).

¶17 Furthermore, "[w]hen assessing the weight and quality of a mitigating factor, we take into account how the mitigating factor relates to the commission of the offense." *Hedlund*, 245 Ariz. at 471 ¶ 15 (quoting *Styers*, 227 Ariz. at 189 ¶ 12). Thus, "we may consider the failure to show such a connection as we assess 'the quality and strength of the mitigation evidence.'" *Id.* (internal quotation mark omitted) (quoting *Styers*, 227 Ariz. at 189 ¶ 12); *see also Eddings*, 455 U.S. at 110, 112–15 (discussing consideration of mitigation evidence related to the circumstances of the crime and assigning weight); *Penry v. Lynaugh*, 492 U.S. 302, 327–28 (1989) (same), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002). We now consider Spreitz's mitigation evidence submitted to the trial court, which consisted largely of the report and testimony of Spreitz's expert, Dr. Todd Flynn, Ph.D., a forensic psychologist.

a. *Age at time of murder*

¶18 A defendant's age can be a statutory mitigating circumstance. *See* § 13-703(G)(5) (1994). "In deciding how heavily to weigh a defendant's age in mitigation, we consider the 'defendant's level of intelligence, maturity, involvement in the crime, and past experience.'" *McKinney*, 245 Ariz. at 227 ¶ 11 (quoting *State v. Jackson*, 186 Ariz. 20, 30 (1996)); *see also Salazar*, 173 Ariz. at 414 ("We may also examine defendant's maturity and

past experiences in determining whether age is a mitigating factor."). In considering the weight to afford this mitigating circumstance, Spreitz argues that more weight should be given to his age at the time of the offense.[3]

**¶19**        Dr. Flynn testified in the aggravation and mitigation hearing that Spreitz lacked the psychological age that someone of his chronological age would have.   The sentencing court found that Spreitz's age of twenty-two years old "in and of itself" was "not a mitigating circumstance," and stated that "[p]erhaps immaturity" was a contributing factor, though not "a significant factor."   On direct review, this Court stated: "We also find that the sentencing judge correctly rejected defendant's age of twenty-two as a mitigating circumstance and properly found that his emotional immaturity was not a significant mitigating factor."   *Spreitz I*, 190 Ariz. at 150.

**¶20**        In our independent review, we note that although Dr. Flynn testified that Spreitz may have been "relatively immature," he also testified that Spreitz was nevertheless a person of average intelligence who was able to make appropriate decisions comparable to others of his age.   With respect to the commission of the murder itself, no one other than Spreitz was involved in the abduction and murder of Reid, and there is no evidence that anyone directly pressured or influenced Spreitz to make the decisions he made that night.   Spreitz acted on his own.   We also note that the record reflects that Spreitz was employed as a private duty nurse providing care to a quadriplegic before the murder.

**¶21**        Consequently, because of his average intelligence, ability to make decisions, and his involvement in Reid's murder, we do not find age to be a mitigating circumstance and assign little weight to any mitigation due to immaturity.   *See State v. Velazquez*, 216 Ariz. 300, 314 ¶ 70 (2007) (affording the mitigating circumstance of age "little weight given [the defendant's] criminal history, average intelligence, maturity level, and the fact that he committed the murder on his own"); *see also State v. Garza*, 216 Ariz. 56, 72 ¶ 82 (2007) ("Age is of diminished significance in mitigation

---

[3]  Spreitz also argues that we should consider developments in the field of neuroscience with respect to differences between adolescents and adults in assessing age and maturity as a mitigating circumstance.   As stated above, our review is limited to what was presented at sentencing.

when the defendant is a major participant in the crime . . . ."); *McKinney*, 245 Ariz. at 227–28 ¶¶ 11–12 (assigning little mitigating weight to twenty-three-year-old defendant who took a leading role in executing and planning burglaries leading to murder); *State v. Hargrave*, 225 Ariz. 1, 18 ¶ 80 (2010) ("We discount age as a mitigating factor when the defendant had a significant criminal record or actively participated in the murders."); *State v. Womble*, 225 Ariz. 91, 104 ¶¶ 57–58 (2010) (finding significance of nineteen-year-old defendant's age diminished because he was a major participant and helped plan the crime in advance); *State v. Laird*, 186 Ariz. 203, 209 (1996) ("An expert's description of a person as immature, impulsive, and without judgment will carry little weight where the circumstances of the crime show otherwise.").

b. *Impaired capacity to appreciate wrongfulness of conduct*

**¶22** Spreitz argued that his intoxication due to alcohol and use of cocaine the night of the murder, along with his longstanding history of substance abuse and mental health issues, is entitled to significant weight. § 13-703(G)(1) (1994) (providing that impairment is a statutory mitigator when "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution"). "Personality or character disorders do not typically satisfy this statutory mitigator." *Poyson II*, 250 Ariz. at 53 ¶ 19. "Yet even when mental health issues or substance abuse fail to satisfy this statutory mitigator, we often consider such evidence as non-statutory mitigation." *Id.*; *see also Clabourne v. Ryan*, 745 F.3d 362, 373–74 (9th Cir. 2014) (acknowledging consideration of mental illness as a non-statutory mitigating circumstance), *overruled in part on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015). However, "[s]ubstance abuse and mental health issues are entitled to little weight when there is no connection to the crime and no effect on the defendant's ability to conform to the requirements of the law or appreciate the wrongfulness of his conduct." *Poyson II*, 250 Ariz. at 53 ¶ 20. We consider each aspect of this mitigating circumstance in turn.

(1) *Intoxication*

**¶23** Spreitz claims that at the time of the offense he was intoxicated after ingesting alcohol and cocaine. Additionally, Spreitz

asserts that because of his alcohol and drug use he experienced memory lapses of the events of the night of the murder, which is consistent with memory impairment characteristic of alcohol intoxication. He also contends that the trial court erroneously required his impairment to be so significant as to provide a defense to the crime. Spreitz further argues that this Court did not independently review this issue and merely determined that the trial court's finding was proper. Finally, Spreitz argues that the murder was an unplanned crime, and this Court should give great weight to intoxication that results in an unplanned killing that is out of character for the defendant.

¶24 The sentencing court did "not believe intoxication is any sort of mitigating circumstance," noting that the officers who stopped Spreitz after the murder "testified there was nothing of any significance to indicate intoxication." In particular, the court stated that Spreitz's "control and actions at that time were not such that would indicate intoxication." Therefore, the trial court concluded that Spreitz's ability and capacity to appreciate the wrongfulness of his conduct was not impaired to any significant degree.

¶25 In our independent review, we find that the record is at best conflicted as to whether Spreitz was actually intoxicated on the night of the murder. Although Spreitz drank numerous beers and may have used cocaine, the record does not reflect that Spreitz exhibited any signs of intoxication or had any issues driving his car. Police observed Spreitz driving into a convenience store parking lot between 12:35 and 12:45 a.m. and observed him driving again at 1:45 a.m. in downtown Tucson. *Spreitz I*, 190 Ariz. at 133. Spreitz was ultimately stopped "because his car was losing oil and emitting smoke," *id*. at 142, and one of the two officers who encountered Spreitz could smell alcohol but did not believe he was intoxicated, *id*. at 134. Similarly, Spreitz's roommate testified that she did not smell alcohol, hear slurred speech, or perceive anything else indicating intoxication. Nonetheless, because he was unusually emotional she stated he "seemed a little drunk."

¶26 With respect to appreciating the wrongfulness of his conduct, the record also reflects that Spreitz sought to explain away the blood and feces on his person. He told police that he had been in a fight and he went so far as to voluntarily ride in the back of a police car to identify the location where the fight had supposedly taken place. During the ride, he also

pointed out where his car had bottomed out, causing the oil leak leading to the smoke coming from his car.

**¶27** Thus, the record demonstrates that Spreitz's behavior and decision-making skills within a short time after the murder were not impaired by his drinking or ingestion of cocaine, and he appeared to have full control of his physical and mental faculties. We therefore find that Spreitz has not established by a preponderance of the evidence that, due to intoxication at the time of the murder, he lacked the capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. *See State v. Kiles*, 175 Ariz. 358, 374 (1993) (concluding the trial court did not improperly discount evidence of defendant's impairment "in light of the conflicting evidence about the effect of defendant's intoxication"); *State v. Rienhardt*, 190 Ariz. 579, 591–92 (1997) (finding no mitigation on the basis of intoxication where defendant took steps to avoid detection by transporting victim to a remote location, dislodging his stuck vehicle and informing the vehicle owner of the damage, calling for aid, giving an alias to police, and later attempting to wash the blood from his clothing); *Poyson II*, 250 Ariz. at 53 ¶ 21 ("We will not find that a defendant's ability to conform or appreciate the wrongfulness of his conduct was impaired when the defendant's actions were planned and deliberate, or when the defendant seeks to cover up his crime."). Accordingly, we reject Spreitz's argument under the facts here that "this Court should give great weight to intoxication that results in an unplanned killing that is out of character for the defendant."

(2) *Longstanding alcohol and drug abuse*

**¶28** Spreitz argues that if this Court does not find proof of statutory mitigation under § 13-703(G)(1) (1994), then evidence of longstanding alcohol and drug abuse is entitled to substantial consideration as a non-statutory mitigating circumstance. Evidence of substance abuse can be considered a mitigating circumstance even if it fails to satisfy the requirements of a statutory mitigating circumstance. *See Poyson II*, 250 Ariz. at 53 ¶ 19 (noting that "even when . . . substance abuse fail[s] to satisfy this statutory mitigator, we often consider such evidence as non-statutory mitigation"); *State v. Gallegos*, 178 Ariz. 1, 18 (1994) (considering defendant's history of drug and alcohol abuse in finding a non-statutory mitigating circumstance). However, we afford such a mitigating circumstance

minimal weight "absent evidence tying it to the crime."[4]   *State v. McCray*, 218 Ariz. 252, 260 ¶ 42 (2008); *see also State v. Garcia*, 224 Ariz. 1, 22 ¶ 104 (2010) (finding defendant had established a substance abuse addiction but affording "minimal weight to this mitigator because he . . . 'failed to tie his . . . drug abuse to the crime or to his mental functioning' when the murder occurred." (second alteration in original) (quoting *State v. Pandeli*, 215 Ariz. 514, 532 ¶ 75 (2007))).

**¶29**        The trial court noted in the sentencing minute entry that Spreitz's "history of intoxication is longstanding."   And on direct review, we also observed that "[t]he record demonstrates defendant's longtime substance abuse problems."   *Spreitz I*, 190 Ariz. at 149.   Here, we likewise note that the record contains evidence that Spreitz has a history of consuming alcohol on a regular basis since childhood and in large amounts in adulthood, as well as using drugs.   We therefore find that Spreitz has established by a preponderance of the evidence the existence of longstanding substance abuse as a non-statutory mitigating circumstance. *See State v. Bocharski*, 218 Ariz. 476, 497 ¶ 103 (2008) (finding history of alcohol abuse a mitigating factor when the defendant "began drinking alcohol around the age of ten," was a "serious alcoholic" who would "drink until he black[ed] out," and "was consuming 'a lot of alcohol'" around the time of the murder, including on the day of the murder).   However, any weight we give this mitigating circumstance is limited by the evidence in the record regarding Spreitz's ability to make moral judgments in stressful scenarios, conform his conduct to the requirements of the law generally, or appreciate the wrongfulness of his conduct.   *See* § 13-703(G)(1) (1994).

**¶30**        Spreitz presented evidence from Dr. Flynn that he had "distorted adult development" because of longstanding substance abuse which impacted his emotional maturity and judgment, including on the night in question, and that he had low-level social skills, a lack of maturity,

---

[4]   The Ninth Circuit stressed that "Spreitz's subnormal childhood was so emotionally disturbing that it led him to drink by the age of twelve or thirteen, which, in turn, disrupted his normal development and contributed to his emotional immaturity."   *Spreitz*, 916 F.3d at 1281.   Thus, it was "both a symptom and cause of other mitigating factors."   *Id.*   However, it is not the causal relationships between or among mitigating circumstances that determines the ultimate weight that should be given but the connection to the crime.

angry or resentful qualities, a hostile world view, and ruminative anxiety. Dr. Flynn also opined that Spreitz's longstanding substance abuse may have predisposed him to violent outbursts, particularly in immediate response to triggering situations. Dr. Flynn's report noted that on the evening of the homicide, Spreitz was particularly at risk of losing control of his anger because he was intoxicated and had been refused entry to his girlfriend's house earlier that night. Additionally, Dr. Flynn concluded in his report that Spreitz suffered from alcoholism, "one of the strongest correlates of violent behavior." Dr. Flynn similarly testified that Spreitz's "recently pent-up rage," which had been "accumulat[ing] over the year[s]," had been "aggravated [over] more recent months" and Spreitz's conduct could therefore be "considered by the Court to constitute an outburst" indicating "an inability to conform [his] behavior."

¶31        Yet Dr. Flynn also reported that Spreitz "used drugs, alcohol, and distracting activities as a means of shutting off . . . disturbing thoughts" regarding his anger, resentment, ruminative anxiety, and hostile world view. The record also indicates that he was able to keep and maintain friendships, including romantic relationships, and that he had a prior girlfriend with whom he "drank a lot" before she ended the relationship to join the Navy. And although the record reflects that Spreitz felt angry and abandoned by her decision, there is no evidence of violence related to the end of that relationship—or any of Spreitz's other relationships. Also, Dr. Flynn testified that he "found no history of violent behavior instigated by . . . Spreitz in his younger years."

¶32        Importantly for our assessment in determining what weight to give this mitigating evidence, we note that on cross-examination in the aggravation and mitigation hearing Dr. Flynn acknowledged that he premised his report on the assumption that Spreitz and Reid were in the desert voluntarily. [5] When asked whether, taking into consideration Spreitz's convictions for kidnapping and sexual assault, it would "be significantly less likely that this was sort of an impulsive outburst of violence," Dr. Flynn stated, "[t]hat would be my opinion."

---

[5]  With respect to whether Reid voluntarily went with Spreitz, we also note that "the state introduced ample evidence to show that the victim's 'semi-automatic' and 'regular' response to specific, repeated offers of a ride [from strangers] was to refuse." *Spreitz I*, 190 Ariz. at 146.

¶33 Thus, although Dr. Flynn testified as to the likely effects of Spreitz's longstanding substance abuse, he failed to establish a sufficient connection between the substance abuse and the circumstances attendant to Reid's murder to entitle this mitigation evidence to significant weight. In fact, when fully informed of the circumstances of Spreitz's criminal conduct in committing the murder, Dr. Flynn qualified his conclusion regarding the nature of Spreitz's actions. Coupled with other evidence noted above that Spreitz did not lack the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, we accord this mitigating circumstance little weight.

### c. *Dysfunctional family life and lack of socialization in childhood*

¶34 We will consider "[a] difficult or traumatic childhood [a]s a mitigating circumstance." *State v. Prince*, 226 Ariz. 516, 541 ¶ 109 (2011). We consider such evidence without regard to any causal connection to the crime, though the weight accorded "depends on whether the defendant can show it has a causal connection with the crime." *McCray*, 218 Ariz. at 260 ¶¶ 36–37.

¶35 The trial court explicitly found that Spreitz's "home was sub-normal, not even a minimally healthy one for developing children," and further that it was "obvious the defendant suffered a disruptive middle childhood—[he] had a punitive, controlling, cold mother, who he could not please, no matter what he did." On direct review, we agreed that Spreitz's "upbringing was subnormal" and that the record supported the conclusion that his "home life was sadly lacking and that his mother's erratic behavior toward [him] inhibited his emotional development and social skills." *Spreitz I*, 190 Ariz. at 149. This Court also found "significant the conclusions of the psychologist testifying on defendant's behalf . . . , who stated that defendant 'did not suffer acute, dramatic abuse.'" *Id.* In according the mitigation evidence little weight, this Court "concur[red] with defendant's statement at his sentencing hearing that 'people that have had as bad a background or worse haven't killed. And I don't want what everyone has said about my background to be an excuse for what's happened.'" *Id.*

¶36 Pursuant to our independent review, we conclude that the record establishes that Spreitz had a difficult upbringing, including but not limited to his father's absence and his mother's non-nurturing behavior

towards him, which Dr. Flynn believed impacted his emotional development and social skills. We therefore find that Spreitz has established by a preponderance of the evidence that his family life, which included inadequate socialization as a child, is a non-statutory mitigating circumstance. We therefore "consider both the degree to which a defendant suffered as a child and the strength of a causal connection between the mitigating factors and the crime 'in assessing the quality and strength of the mitigation evidence.'" *Bocharski*, 218 Ariz. at 499 ¶ 110 (quoting *State v. Hampton*, 213 Ariz. 167, 185 ¶ 89 (2006)); *see also Poyson II*, 250 Ariz. at 55 ¶ 30 ("When childhood abuse is established by a preponderance of the evidence, its mitigating weight depends on the age of the defendant at the time of the murder and the causal connection between the abuse and crime committed.").

¶37 Dr. Flynn ultimately inferred from interviews of family members that Spreitz experienced "a fully pathological home environment" that included "physical and emotional neglect," as well as physical abuse, and "possibly emotional abuse by the mother" in his developing years without the healthy presence of a father figure. Spreitz, though, "describe[ed] his mother in positive terms" and evidence of physical abuse was limited to a description of one incident where the mother "broke a paddle over [Spreitz's] back." And on cross-examination during the aggravation and mitigation hearing, Dr. Flynn testified that Spreitz did not suffer any acute or dramatic abuse in his family. Finally, Dr. Flynn confirmed that Spreitz did not "show any current sign or symptom of any acute emotional disorder" and did not "suffer from any cognitive deficit that would prevent him from knowing right or wrong or conforming his behavior to the law." Therefore, we assign little weight to this circumstance. *See Hedlund*, 245 Ariz. at 473 ¶ 25 (assigning evidence of defendant's abusive childhood little weight when it did not affect defendant's ability to conform his behavior to the law or render him "unable to differentiate right from wrong"); *State v. Hidalgo*, 241 Ariz. 543, 558 ¶ 68 (2017) (attributing little weight to mitigating circumstances of a cruel and traumatic childhood because the defendant had "not shown their causal connection to the murders").

d. *Remorse*

¶38 Remorse can be a non-statutory mitigating circumstance, "as can admissions of guilt or cooperation with law enforcement." *Poyson II*,

250 Ariz. at 56 ¶ 34. But admissions of guilt or cooperation with law enforcement are afforded little mitigating weight when the defendant has nothing to lose by cooperating or confessing. *See State v. Murdaugh*, 209 Ariz. 19, 36 ¶ 84 (2004) (concluding evidence of cooperation entitled to little mitigating weight when defendant agreed to cooperate only after learning police found the crime scene). Similarly, the weight afforded remorse is diminished when sincerity is in question. *State v. Medina*, 232 Ariz. 391, 413 ¶¶ 112–13 (2013) (finding sincerity of defendant's remorse doubtful when grounded in fear of being caught).

**¶39** On direct review, we addressed Spreitz's argument that the trial judge did not consider his remorse in determining the propriety of a death sentence. *Spreitz I*, 190 Ariz. at 149. We concluded that there was "no reason to doubt that the sentencing judge weighed defendant's remorse in his balancing of mitigating and aggravating circumstances." *Id.* Additionally, this Court acknowledged the evidence of Spreitz's remorse in the record and explained that "[w]e recognize remorse as a non[-]statutory mitigating factor." *Id.* at 150.

**¶40** We likewise acknowledge in our independent review Spreitz's expressions of remorse in the record and his profession of responsibility for Reid's death. Yet we also note that he failed to seek any aid for Reid or notify law enforcement of her whereabouts, leaving her body to decompose in the desert for days before she was discovered. [6] Additionally, Spreitz's remorse followed his arrest, and his actions after the murder were otherwise primarily designed to thwart investigative efforts—belying the extent of any claimed cooperation with law enforcement. It would be more significant "if, for example, [his remorse] had prompted [Spreitz] to report his actions toward Ms. Reid to the authorities." *Id.* Thus, this mitigating factor is entitled to little weight.

---

[6] On this point, Spreitz mischaracterizes *Poyson II*'s holding with respect to remorse. It is true that in *Poyson II* this Court noted on review that the record was "replete with evidence" of remorse which the sentencing court had discounted because it did not lead the defendant to turn himself in. 250 Ariz. at 56 ¶ 36. However, this Court did not, as Spreitz suggests, "reverse course on discounting remorse when a defendant does not report himself to police." In fact, this Court buttressed the notion that remorse may be mitigating but could still "pale[] in significance when compared to . . . strong aggravating factors." *Id.*

*See Poyson II*, 250 Ariz. at 56 ¶¶ 34–35 (stating that remorse is "afforded little mitigating weight when the defendant has nothing to lose by cooperating or confessing").

> e. *Lack of adult convictions, good character, and capability for rehabilitation*

¶41 Lack of criminal history can constitute a mitigating circumstance, *State v. Graham*, 135 Ariz. 209, 213 (1983), as can good character, *State v. Greene*, 192 Ariz. 431, 443 ¶ 57 (1998), and the potential for rehabilitation, *State v. Villalobos*, 225 Ariz. 74, 82 ¶ 34 (2010).

¶42 On direct review, this Court found that "the record supports the sentencing judge's findings that defendant had no previous adult felony convictions, no prior record of acts of violence, and that defendant is capable of rehabilitation." *Spreitz I*, 190 Ariz. at 150. In our independent review, we note that Spreitz does have a record of unlawful behavior that includes numerous traffic violations, putting his fist through a window at a fast-food restaurant, and intimidating a prostitute into having sex with him without payment, as well as several outstanding arrest warrants. Thus, although we concur in the finding that he does not have any prior felony convictions, we assign little weight to this mitigating circumstance because Spreitz does in fact have a history of unlawful conduct.

¶43 With respect to Spreitz's good character, the record does contain evidence of his kindness and thoughtfulness. But given other evidence in the record of past unlawful conduct, we assign little weight to this mitigating circumstance.

¶44 We concur in the conclusion that Spreitz is capable of rehabilitation to an extent, particularly in a controlled environment as evidenced by the testimony of jail officials at the aggravation and mitigation hearing. However, expert testimony also established that Spreitz had anger issues that could continue to be triggered in societal interactions that are not present in a prison environment. We therefore find that, although Spreitz has established capability of rehabilitation as a mitigating circumstance, we assign it little weight.

f. *Future dangerousness*

**¶45** Lack of future dangerousness may be a mitigating circumstance. *See Villalobos*, 225 Ariz. at 82 ¶ 34. Spreitz argues that the trial court equivocated on whether he would ever reoffend and that this Court did not independently review the evidence in support of the mitigating circumstance on direct review. Spreitz also asserts that Dr. Flynn "gave uncontroverted expert testimony that [he] possesses none of the characteristics of a person who will likely be violent in the future."

**¶46** The trial court did state that "past violence is a good indication of future violence" and on direct review, this Court noted that the trial court "refused, in light of the murder, to conclude that defendant posed no risk of future danger." *Spreitz I*, 190 Ariz. at 149. In this independent review we find, though, contrary to Spreitz's argument, that the expert evidence presented at sentencing did not conclusively establish that Spreitz would not be predisposed to future violence.

**¶47** Dr. Flynn did initially explain that Spreitz is not at risk for future potential violent behavior as he does not fit the criteria for antisocial personality disorder—nor is he a psychopath. Under cross-examination, however, Dr. Flynn acknowledged that he cannot make a judgment on "the type of person [Spreitz] will be 20 years from now." Furthermore, Dr. Flynn stated that Spreitz suffered from anger issues that could be triggered by societal interactions and substance abuse that Spreitz had not encountered on a regular basis in prison. We therefore find that Spreitz has failed to establish lack of future dangerousness as a mitigating circumstance by a preponderance of the evidence. *See State v. Spears*, 184 Ariz. 277, 294 (1996) (finding "evidence insufficient" to show a minimal risk of future dangerousness where defendant's psychologist testified both that the defendant was "not chronically violent and would not be violent in prison" and "his condition could be retriggered at any time, causing irrational or impulsive behavior").

g. *Model prisoner*

**¶48** "[T]his Court has assigned very little mitigating weight to good behavior because inmates are expected to be good." *Id.* at 57 ¶ 39; *see also, e.g.*, *State v. Payne*, 233 Ariz. 484, 518 ¶ 157 (2013); *State v. Kiles*, 222 Ariz. 25, 42 ¶ 89 (2009); *State v. Dann*, 220 Ariz. 351, 375 ¶ 141 (2009). And

any reference to Spreitz's conduct in prison since sentencing is beyond the scope of our review given that "we do not consider evidence that was not before the trial court on direct review." *Poyson II*, 250 Ariz. at 56 ¶ 39. Thus, although we acknowledge as the trial court did that the record reflects Spreitz's efforts at personal improvement and, based on testimony from jail personnel, of his willingness to assist other inmates, we accord this circumstance little weight.

### h.  *Additional non-statutory mitigating circumstances*

#### (1)  Personal fragmentation/disorganized thought process

**¶49**　　　As with substance abuse issues, we will consider evidence of mental health issues as non-statutory mitigation.  *Poyson II*, 250 Ariz. at 53 ¶ 19.  But as noted, mitigating circumstances are "entitled to little weight when there is no connection to the crime and no effect on the defendant's ability to conform to the requirements of the law or appreciate the wrongfulness of his conduct."  *Id.* ¶ 20.

**¶50**　　　Dr. Flynn stated in his report that Spreitz did "not show any current sign or symptom of any acute emotional disorder."  He also said that Spreitz had "good communication skills . . . and intact cognitive processing abilities."  Dr. Flynn, though, did note that Spreitz tested at extremely elevated levels on the Minnesota Multiphasic Personality Inventory ("MMPI")[7] scales that represent "behavioral acting out and the kind of personal fragmentation and identity diffusion that leaves people disorganized and ill-able to develop emotionally close, mutually satisfying relationships."  The trial court acknowledged that the MMPI testing showed "extreme elevation on several scales" but found "nothing to suggest they are mitigating circumstances that had any significant impact on Mr. Spreitz's ability and competence to appreciate the wrongfulness of his conduct."

**¶51**　　　In our independent review, we likewise note that Dr. Flynn, based on the fact that Spreitz had "extremely elevated levels" on the MMPI

---

[7]　The MMPI is a common psychometric test used to assess personality traits and psychopathology.  *See State v Roque*, 213 Ariz. 193, 205 ¶ 23 (2006).

personality scale, found Spreitz may have been "disorganized" or subject to "acting out" or "ill-able to develop emotionally close, mutually satisfying relationships." However, the fact that Spreitz had elevated test results did not detract from Dr. Flynn's ultimate conclusion that Spreitz does not suffer from an acute disorder and has intact cognitive processing abilities—nor do these results "contradict" his deliberate and organized actions to cover up his crime. *See Kiles*, 175 Ariz. at 374 (refusing "to equate defendant's *unwillingness* to control his actions with his *inability* to do so" despite defendant's intoxication and personality disorder, which an expert testified "significantly impaired defendant's capacity to conform his conduct to the requirement of the law") (emphasis in original parenthetical). We further note from the record that when arrested and brought in for questioning, Spreitz attempted to further obstruct investigators' efforts by implying he had "no idea" how blood and fecal matter had gotten onto his clothing. Yet he proceeded to tell investigators how he met Reid, asked her if she needed a ride, took her to the desert to drink and party, and even fought with her. We finally note that Dr. Flynn confirmed during cross-examination that Spreitz "does not suffer from any cognitive deficit that would prevent him from knowing right from wrong or conforming his behavior to the law." Therefore, although we conclude that Spreitz has established personal fragmentation as a mitigating circumstance, we assign it little weight.

(2) Family support

**¶52** "The existence of family ties is a mitigating factor." *State v. McGill*, 213 Ariz. 147, 162 ¶ 67 (2006). The record contains evidence of letters sent from family members and friends in support of Spreitz. However, considered in isolation, this factor is only accorded "minimal mitigating weight." *State v. Poyson* ("*Poyson I*"), 198 Ariz. 70, 82 ¶ 47 (2000) (affording family support minimal weight where defendant's mother and aunt testified, other relatives cooperated with the mitigation specialist's investigation, and family members wrote letters to the court).

(3) Adoption of new goals

**¶53** "The adoption of new goals may militate in a defendant's favor but does not require leniency." *Spears*, 184 Ariz. at 295. The record reflects that Spreitz earned a GED while incarcerated prior to trial, learned Spanish, and engaged in other educational efforts. The trial court

acknowledged that Spreitz had "begun a process of improvement and emotional growth while confined at the Pima County Jail, where he has taken part in education programs." On direct review, this Court noted that Spreitz "had experienced personal growth" but declined to find this a mitigating circumstance given that we expect a defendant "to behave himself in county jail while awaiting [sentencing]." *Spreitz I*, 190 Ariz. at 150 (alteration in original) (internal quotation mark omitted) (quoting *State v. Lopez*, 175 Ariz. 407, 416 (1993)). Regardless, even were we to conclude that Spreitz's education efforts constitute a mitigating circumstance, they are entitled to little weight.

### (4)   Implied recommendation of leniency

**¶54**         "[A] recommendation of leniency from authorities who are intimately involved in a case carries significant weight and may constitute a mitigating circumstance." *Gallegos*, 178 Ariz. at 20. In support of his argument that the presentence report contains an implied recommendation of leniency, Spreitz references the report's executive summary, which states: "Unfortunately, a sentence of natural life is not available to the [c]ourt, who must now decide whether to sentence the defendant to death or a minimum of [twenty-five] years." As is clear from the quoted language, the presentence report made no recommendation as to what sentence should be imposed. We therefore do not find evidence of an implied recommendation of leniency to consider as a mitigating circumstance.

## C.  Reweighing Of Circumstances

**¶55**         Upon independent review, we are required to consider the aggravating circumstance and all mitigation evidence to determine whether the mitigation evidence individually or cumulatively is sufficiently substantial to call for leniency. *Penry*, 492 U.S. at 328 (stating that "full consideration of evidence that mitigates against the death penalty *is essential* if the [sentencer] is to give a 'reasoned *moral* response to the defendant's background, character, and crime'" (first emphasis added) (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 184 (1988) (O'Connor, J., concurring))). Moreover, we consider "the quality and the strength, not simply the number, of aggravating and mitigating [circumstances]." *State v. Roseberry*, 210 Ariz. 360, 374 ¶ 77 (2005) (quoting *Greene*, 192 Ariz. at 443 ¶ 60); *see also State v. Newell*, 212 Ariz. 389, 405 ¶ 82 (2006).

¶**56**      When mitigating evidence reaches a sufficiently substantial "depth and breadth" to call for leniency and the aggravating evidence is "limited" or "not particularly strong," there may be doubt as to whether a death sentence should be imposed, in which case this Court "resolve[s] that doubt in favor of a life sentence." *Bocharski*, 218 Ariz. at 498 ¶ 109, 499 ¶ 112 (internal quotation mark omitted) (quoting *Roque*, 213 Ariz. at 231 ¶ 170). Ultimately, Spreitz argues that this Court should resentence him to life in prison given the single aggravating factor of especially cruel in light of the mitigation evidence offered.

¶**57**      This Court has considered all the mitigation evidence presented at sentencing without regard to any causal connection to Reid's murder and has carefully considered the appropriate weight to afford each circumstance. Because we find that each of the mitigating circumstances established at sentencing is entitled to little weight whether considered individually or cumulatively, we conclude that the mitigation evidence is insufficient to warrant leniency in light of the significant weight of the especially cruel aggravating circumstance.

## CONCLUSION

¶**58**      We affirm the sentence of death.